[4]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ACCESS 4 ALL, INC., a Florida not for profit corporation, and PETER SPALLUTO, Individually,<br><br>Plaintiffs,<br><br>v.<br><br>539 ABSECON BOULEVARD, L.L.C., a New Jersey Limited Liability Company,<br><br>Defendant, | Civil No. 05-5624 (FLW)<br>**OPINION** |

**WOLFSON,** District Judge

Presently before the Court is Defendant's motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiffs Access 4 All, Inc. ("Access") and Peter Spalluto ("Spalluto") allege that the hotel operated by Defendant, 539 Absecon Boulevard, LLC ("Absecon"), violated Title III of the Americans with Disabilities Act ("ADA") by being inaccessible to individuals with disabilities as defined by the ADA. Plaintiffs seek injunctive relief, attorney's fees, and litigation expenses. For the reasons set forth below, the Court denies Defendant's motion without prejudice to allow Plaintiffs the opportunity to amend their Complaint within 10 days.

## I. BACKGROUND

Access is a nonprofit organization incorporated in Florida whose membership includes individuals with "disabilities as defined by the ADA." (Compl. ¶ 8.) The organization's purpose is to represent its members' interests by ensuring accessible places of public accommodation, and prevent discrimination against its members because of their disabilities. (Id.) Spalluto, a member of Access and a Florida resident, is a quadriplegic and requires the use of a wheelchair.[1] On September 11, 2005, Spalluto stayed at Defendant's hotel, the Comfort Inn North, in Absecon, New Jersey ("Absecon"). (Spalluto Aff. ¶ 3.) During his stay, Spalluto found that numerous areas of the hotel were inaccessible to him including the parking area, hotel entrance, restrooms, guest rooms, and the outdoor pool. (Compl. ¶ 16.) Consequently, although Spalluto travels to Atlantic City, New Jersey ("Atlantic City") several times a year for professional and personal reasons,[2] he would be unable to stay at Defendant's hotel. (Spalluto Aff. ¶ 2.)

On November 30, 2005, Plaintiffs filed a Complaint pursuant to Title III of the ADA alleging that Spalluto and other individuals with similar disabilities were denied access to Defendant's hotel. Furthermore, Plaintiffs allege that Defendant has discriminated against them

---

[1] The Court notes that although Plaintiffs' Complaint does not specifically allege the nature of Spalluto's disability, a sworn affidavit by Spalluto states that he is a quadriplegic and requires a wheelchair. (Spalluto Aff. ¶ 1.) When considering a facial attack on plaintiff's standing, federal courts have limited their review to the complaint and documents referenced therein. See Gould Electronics Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). Thus, as discussed infra, the Court denies Defendant's Motion without prejudice and gives Plaintiff 10 days to amend his Complaint to include the relevant information from his affidavit. In the meantime, however, the Court will analyze whether the facts as alleged in the affidavit would be sufficient to find that Plaintiffs have standing to bring this claim.

[2] The Court notes that Spalluto avers in his affidavit, but does not allege in his Complaint, that he owns property in Atlantic City, formerly conducted business in Atlantic City, and has family who reside in Bricktown, New Jersey. See supra fn. 1.

and will continue to do so as long as the Comfort Inn North fails to comply with the ADA Accessibility Guidelines ("ADAAG") (Compl. ¶ 16.) Specifically, Plaintiffs seek to enjoin Defendant from maintaining any "architectural barriers" to Spalluto and similarly situated individuals and require Defendant to remove any such barriers to comply with the ADAAG.[3]

Subsequently, on January 1, 2005, Defendant filed the instant Motion to Dismiss Plaintiff's Complaint for Lack of Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Defendant contends that Plaintiffs lack standing to challenge whether the Defendant's hotel is ADA compliant.

## II. MOTION TO DISMISS STANDARD

The standard of review for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction varies depending on whether the defendant makes a facial or factual challenge. Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir.2000). A facial attack on a court's jurisdiction "is directed to the sufficiency of the pleading as a basis for subject matter jurisdiction." The Medical Society of New Jersey v. Herr, 191 F.Supp.2d 574, 578 (D.N.J. 2002). The standard for reviewing a facial attack is similar to the standard governing a Rule 12(b)(6) motion. "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Id. at 176. In contrast, when reviewing a factual challenge, the allegations of the complaint are not accepted as true, and "the court may consider evidence outside the pleadings." Id. The defendant can make a factual attack by submitting testimony,

[3] Id. Under Title III of the ADA, only injunctive relief is permitted. Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12188(a)(1).

affidavits, or other evidentiary materials. Access 4 All Inc. v. Wintergreen Commercial Partnership , LTD., 2005 WL 2989307 at *2 (N.D.Tex. 2005).

At the outset, the Court notes that the instant Motion to Dismiss represents a facial challenge to this Court's jurisdiction. As such, the Court may only consider the allegations of the complaint and documents referenced therein. In the instant matter, Plaintiff's Complaint does not specifically allege the nature of Spalluto's disability or various other factors that are relevant to this Court's standing analysis including information regarding Plaintiff's connections to the South Jersey area[4]. This information, however, is contained in Spalluto's supplemental affidavit. Therefore, as noted above, the Court will deny Defendant's Motion to Dismiss without prejudice and give Plaintiffs leave to file an Amended Complaint within 10 days to be consistent with the information from Spalluto's affidavit. In the meantime, however, to determine whether the amendment would be futile pursuant to Fed. R. Civ. P. 15(a), I will analyze whether the facts as alleged in Spalluto's affidavit are sufficient to withstand a Motion to Dismiss for Lack of Jurisdiction.

## III. DISCUSSION

Title III of the ADA prohibits discrimination against disabled individuals in places of public accommodation. 42 U.S.C.A. § 12182(a). Discrimination includes "a failure to remove architectural barriers. . . that are structural in nature, in existing facilities. . .." 42 U.S.C.A. § 12182(b)(2)(A)(iv). The ADA provides a private cause of action for injunctive relief to "any

---

4. See infra at pp. 8-9.

person who is being subject to discrimination on the basis of disability." 42 U.S.C.A. § 12188(a)(1).

1. Spalluto's Individual Standing

Initially, Defendant argues that Spalluto lacks individual standing to bring an ADA claim. In order to set forth a viable claim in federal court, a plaintiff is required to satisfy both the Article III constitutional minimum of a "case or controversy" and any prudential considerations set by the courts. See Clark and A.D.A. Access Today v. Burger King, 255 F.Supp. 2d 334, 341 (D.N.J. 2003). To satisfy Article III standing, a plaintiff must demonstrate he/she has:

> (1) suffered an "injury in fact" that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a casual connection between the injury and the conduct complained of, that the injury has to be fairly traceable to the defendant's challenged action; and (3) it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). In addition to the Article III "case or controversy" requirement, prudential limitations stand as judicially imposed limitations on a court's power to hear and decide a case. See Warth v. Seldin, 422 U.S. 490, 498 (1975). In Warth, the Supreme Court elaborated on the prudential standing considerations that must be satisfied in addition to the constitutional minimum. Id. Prudential considerations include a prohibition on a plaintiff's ability to bring a "generalized grievance" that is shared equally with a large class of citizens and that a plaintiff must assert his own legal rights and interests and not rely on the claims of others. Id. at 499-500.

In the instant matter, Defendant does not contend that Plaintiffs have not satisfied the prudential standing requirements, thus, the Court will only consider whether Spalluto satisfies

Article III standing. Therefore, the Court must initially determine whether Spalluto suffered an injury in fact, that is concrete and imminent. In determining whether a future injury is "concrete and particularized" for the purposes of an ADA claim, courts have considered the likelihood of the plaintiff returning to the defendant's place of public accommodation. Wintergreen, 2005 WL 2989307 at *3. A plaintiff cannot merely allege an intention to "someday" return to the defendant's place of public accommodation. Lujan, 504 U.S. at 564. Generally, courts look to the following factors to determine if a plaintiff is likely to return including: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage of the defendant's place of public accommodation; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of travel near the defendant. Wintergreen, 2005 WL 2989307 at *3. In Burger King, for example, the court held that a plaintiff established a likelihood of future injury based on his previous visits to defendant's restaurants and his desire to return to those locations. 255 F.Supp. 2d at 343. However, in Access 4 All v. Oak Spring, Inc., the court found that a plaintiff only established a speculative injury where he alleged a general intent return to defendant's hotel and no continuing connection to the area where defendant's hotel was located. 2005 WL 1212663 at *5 (M.D.Fla. 2005). Additionally, although courts have limited Title III ADA claims to architectural barriers related to an individual plaintiff's disability, a plaintiff is not required to encounter every individual barrier to his disability at the defendant's place of public accommodation. Steger v. Franco, Inc., 228 F.3d 889, 893-94 (3d Cir. 2000).

In the instant matter, Defendant alleges that Spalluto has not suffered the requisite injury in fact because his intent to return to the Comfort Inn North is too speculative. In support of this

contention, Defendant cites Spalluto's distance from the hotel and claims that the distance is so substantial as to make Spalluto's desire to return hypothetical. This Court does not agree.

First, the Court notes the first factor, plaintiff's proximity to defendant's place of public accommodation, is less determinative in the context of hotels than in restaurants and other retail establishments. See Wintergreen, 2005 WL 298307 at *3. In Disabled in Action of Metro N.Y. v. Trump Int'l Hotel & Tower, the court held that plaintiffs who lived in New York and had visited defendant's New York restaurant had a definitive intent to return but for defendant's noncompliance with the ADA. 2003 WL 1751785 at *8-9 (S.D.N.Y. 2003). Similarly, in Hubbard v. Rite Aid Corp., the court determined that a plaintiff who lived 20 miles away from the defendant's shopping center and shopped there on previous occasions had standing to pursue an ADA claim. 2006 WL 1359630 at*9 (S.D.Cal. 2006). However, when applying these factors to an ADA claim arising out of a hotel's alleged non-compliance, in Wintergreen, for example, the court found that plaintiff's proximity to defendant's hotel neither injured nor advanced his claim and, this part of the analysis was inapplicable. See 2005 WL 2989307 at *3. In the instant matter, Plaintiff's claim arises out of barriers he encountered at Defendant's hotel; thus, although Plaintiff resides in Florida, the Court finds that his considerable distance from the hotel does not foreclose his claim for lack of standing.

Additionally, this Court must consider Plaintiff's past patronage of defendant's hotel. The ADA does not require an individual asserting a claim to participate in a "futile gesture" if she has actual knowledge of a defendant's failure to comply with ADA provisions. 42. U.S.C.A. § 12188(a)(1). It is sufficient for a plaintiff to allege that he has actual knowledge of architectural barriers and that but for noncompliance with ADA provisions, he would avail

himself of the defendant's goods and services. See e.g., Clark v. McDonald's Corp., 213 F.R.D 198, 229 (D.N.J. 2003) (finding that a plaintiff was deterred from patronizing defendant's restaurant due to known violations of ADA and that such deterrence was sufficient to constitute an "actual injury"); Kratzer v. Gamma Management Group, Inc., 2005 WL 2644996 at *3 (E.D.Pa. 2005) (finding that plaintiffs' visit and alleged intent to return to defendant's hotel stated a claim of an actual injury under the ADA); Pickern v. Holiday Quality Foods Inc., 293 F.3d 113, 1138 (9th Cir. 2002) (finding that plaintiff's allegation that he had visited defendant's store and would shop there if it was accessible to the disabled was sufficient to establish an actual injury for the purposes of standing). In the instant matter, Spalluto alleges that he visited the Comfort Inn North and that he encountered architectural barriers while there. (Compl. ¶ 16.) Furthermore, Spalluto states that he wants to return to the Comfort In North but is unable to because of architectural barriers that are not compliant with ADA provisions. (Id. at 9.) Moreover, Defendant presents no evidentiary materials or affidavits contesting Spalluto's allegations.

In addition, the Court must address the third and fourth factors of the intent to return analysis; in other words, plaintiff must show definitive plans to return and frequency of travel in the area of defendant's place of public accommodation. Wintergreen, 2005 WL 2989307 at *3. As noted above, because this is a facial challenge to this Court's jurisdiction, the Court cannot consider materials outside of the pleadings. However, the Court notes that in his affidavit, Spalluto alleges that he has definitive plans to travel to the Absecon area and that he visited Atlantic City several times a year in the past and will continue to do so. (Spalluto Aff. ¶¶ 2-3.) Uncontested factual allegations of an intent to return by the plaintiff are sufficient to establish a

likelihood that plaintiff intends to return. Access for the Disabled, Inc. and John Garon v. Publix Supermarkets, Inc., Case No. 01-6738 (S.D.Fla. 2003). Thus, if Plaintiffs amend the Complaint to include those factual allegations, Spalluto may establish his intent to return under the third prong of the analysis.

In addition, plaintiff must have set forth a definitive intent to return before filing his complaint in order to establish standing. Wintergreen, 2005 WL 2989307 at *3. In Wintergreen, the court determined that in addition to a total lack of contacts with the area, hotel reservations made after the filing of the complaint may not be used to assert an intent to return. 2005 WL 2989307 at *3. In his affidavit, however, Spalluto alleges that he has visited Absecon and Atlantic City prior to this suit, and that he had pre-existing business and familial associations in the area. (Spalluto Aff. ¶ 2.) Indeed, Spalluto contends that the hotel's close proximity to the airport makes it suitable and convenient for his frequent visits to Atlantic City. (Id. at ¶3.) Thus, as above, if Plaintiffs amend the Complaint, Spalluto's allegations may satisfy the fourth prong of the analysis.

Finally, in order to satisfy Article III standing, plaintiff must show a causal connection between defendant's actions and the harm he has suffered and that such harm is legally redressable. Lujan, 504 U.S. at 560. Defendant does not contest either of these two prongs of Spalluto's Article III standing. Indeed, it is clear from Plaintiffs' complaint that Spalluto encountered specific architectural barriers when he stayed at the Defendant's hotel. Because Spalluto is a quadriplegic who requires the use of a wheelchair, he was unable to use numerous services and amenities at the Defendant's hotel due to alleged ADAAG violations. (Compl. ¶ 16.) Moreover, Plaintiffs ask this Court to grant injunctive relief to enjoin Defendant from

maintaining architectural barriers that allegedly prevent Spalluto and others similarly situated from patronizing the Comfort Inn North. Clearly, injunctive relief would address such harm. Thus, in the instant matter, if the Complaint is properly amended to reflect the allegations set forth in Spalluto's affidavit, Spalluto will state an actual and imminent injury necessary for the purposes of standing. However, at this time, the Court will deny Defendant's Motion without Prejudice and allow Plaintiff 10 days within which to amend the Complaint.

2. Access' Associational Standing

Even where an association lacks standing to sue in its own right because it has not itself suffered an injury-in-fact, it will have standing to bring suit on behalf of its members when: (1)its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members. Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977); Clark v. McDonald's Corp., 213 F.R.D. 198, 207 (D.N.J. 2003). Associations bringing claims on behalf of its members are limited to relief that, "if granted, will inure to the benefit of those members of the association actually injured." Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 406 (3d Cir. 2005).

In determining whether the first prong of this test is met, courts analyze whether individual members on whose behalf the suit is brought would themselves have satisfied Article III standing requirements had they sued individually. Clark, 213 F.R.D. at 207. In the instant matter, because this Court has denied Defendant's Motion and granted Plaintiff leave to amend

the Complaint, the Court cannot at this time determine if Access will satisfy the first prong of the associational standing analysis. However, if the Complaint is amended, Access will likely establish associational standing.

Pursuant to the second prong of the test for associational standing, the Court must also consider whether the interests that Access seeks to protect are germane to its purpose. According to the Complaint, the alleged purpose of the organization is "to represent the interest of its members by *assuring places of public accommodation are accessible* to and usable by the disabled and that its members are not discriminated against because of their disabilities" (Compl. ¶ 8) (emphasis added). Thus, the present suit is germane to Access's basic principles and representative of its purpose and the Court holds that Access satisfies the second prong of the test for associational standing.

Finally, in determining whether an organization meets the third prong of the standing test, a court must consider whether the claim advanced by the association requires participation of each individual member. "It is almost a bright-line rule 'that requests by an association for declaratory and injunctive relief do not require participation by individual association members'. . .but conversely 'damages claims usually require significant individual participation, which fatally undercuts a request for associational standing.'" Clark, 213 F.R.D. at 207 (citing Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc., 280 F.3d 278, 284 (3d Cir. 2002). In the instant matter, Plaintiffs are seeking injunctive relief "including an order to make all readily achievable alternations to the facility. . . to the extent required by the ADA." Pl's Compl. Indeed, no award of damages is sought by Access or by Spalluto. Thus, an individualized assessment of Plaintiff's members to determine the measures that Defendant must

take to become ADA compliant is not necessary. Therefore, if Plaintiffs properly amend the Complaint to include factual allegations specific to Spalluto, Access will properly establish associational standing.

3. Access' Organizational Standing

Finally, Defendant contends that Access has not established organizational standing. For an organization to possess standing to sue in its own right, it must satisfy the traditional test by alleging "a personal stake in the outcome" of an otherwise justiciable controversy. Warth v. Seldin, 422 U.S. 490, 498 (1975). An organization does not possess standing simply because it has an ideological or abstract social interest that is adversely affected by the challenged action. Sierra Club v. Morton, 405 U.S. 727, 735(1972). In the instant matter, because this Court has denied Defendant's Motion without prejudice pending an amendment of Plaintiff's Complaint, I will refrain from considering whether Access has asserted an injury in fact sufficient to assert its own organizational standing.

## IV. CONCLUSION

For the reasons discussed herein, Defendant's Motion to Dismiss is DENIED WITHOUT PREJUDICE. An appropriate order will follow.

Dated: June 26, 2006

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge